UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

    vs.                                                            7:23-CR-161 (MAD)

DIONISIO FIGUEROA, *also known as Dionicio*,

                            **Defendants.**

_____

**APPEARANCES:**                                    **OF COUNSEL:**

**OFFICE OF THE UNITED**                **FRANK J. BALSAMELLO, AUSA**
**STATES ATTORNEY**                          **STEPHANIE SIMON, AUSA**
1 St. Andrew's Plaza
New York, New York 10007
Attorneys for the Government

**OFFICE OF THE FEDERAL**            **PAUL J. EVANGELISTA, AFPD**
**PUBLIC DEFENDER – NDNY**        **JEREMY B. SPORN, AFPD**
54 State Street
Ste 310
Albany, New York 12207
Attorneys for Defendant Figueroa

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Defendant Dionisio Figueroa ("Defendant") was named in four counts of a seven count indictment, charging him with conspiracy to bribe a public officer, federal employee bribery, receiving unauthorized compensation as a federal employee, and making false statements to law enforcement agents. Trial commenced on December 4, 2023, and on December 11, 2023, the jury found Defendant guilty on all four counts.

Currently before the Court is Defendant's renewed motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

## II. BACKGROUND

Defendant and co-conspirator Telesforo Del Valle, Jr.[1] were named in a seven count indictment charging them with (1) conspiring to engage in a scheme during which Defendant referred criminal defendants to Del Valle in exchange for Del Valle paying Defendant a share of the fees Del Valle earned from such clients, in violation of 18 U.S.C. § 371; (2) federal employee bribery, in violation of 18 U.S.C. § 201(b); (3) payment to, and receipt by, a federal employee of unauthorized compensation, in violation of 18 U.S.C. § 203(a); and (4) making material false statements to law enforcement, in violation of 18 U.S.C. § 1001. *See* Dkt. No. 3.

At trial, the Government introduced evidence establishing that, since in or about 2002 through at least November 2022, Defendant was employed as a deputy clerk in the Magistrate Clerk's Office of the United States District Court for the Southern District of New York, which is located at 500 Pearl Street in Manhattan. In that role, he was responsible for, among other things, entering data about official case events and filings on criminal case dockets; performing inquiries and giving information, whether in person, by phone, or in writing, regarding the status of cases; and assisting with the intake of criminal cases, including by preparing appearance bonds for defendants being released on bail, advising defendants and their family members about the conditions of such bonds, and ensuring that such bonds were properly executed before a defendant's release. At trial, the Government introduced evidence establishing that Defendant did not faithfully execute his official duties as a court employee; instead, he agreed to accept bribes and compensation from Del Valle – a criminal defense attorney in the Southern District of New

---

[1] On November 16, 2023, Del Valle pled guilty to the crimes alleged in the indictment.

York for over twenty years – in return for referring criminal defendants in pending cases to Del Valle as potential clients.

The Government introduced records from Del Valle's law firm, including ledgers and client files, as well as emails, text messages, voicemails, and other communications between and among Defendant, Del Valle, Del Valle's employees, and CC-1,[2] among other things, showing that from 2011 through 2022, Defendant referred dozens of clients to Del Valle.  Testimony from former clients and their relatives established that Defendant spoke negatively about court-appointed counsel, touted Del Valle's prowess as an attorney, and encouraged potential clients and/or their families to retain Del Valle in criminal cases.  The Government further argued that other records, communications, and location data, as well as witness testimony, established that Del Valle paid Defendant a percentage of his client fees through cash-stuffed envelopes that were typically retrieved from Del Valle's law firm by CC-1.

The Government further argued at trial that Defendant, Del Valle, and CC-1 all lied to law enforcement to conceal their criminal scheme.  In particular, on November 3, 2022, special agents from the U.S. Attorney's Office for the Southern District of New York executed search warrants for cellphones used by Defendant, Del Valle, CC-1, and one of Del Valle's employees.  While executing those warrants, the agents conducted interviews of Defendant, Del Valle, and CC-1.  Despite being warned that lying to federal agents is a crime, when asked about the scheme, all three made materially false statements that were readily disproven by, among other things, the evidence described above.

In his Rule 29 motion, Defendant seeks a judgment of acquittal on Count Four, which alleges a violation of 18 U.S.C. § 203 (the "Section 203 Count").  *See* Dkt. No. 81.  Defendant

---

[2] "CC-1" is an unindicted co-conspirator, identified as CC-1 in the indictment.

argues that "Section 203 is not applicable to acts alleged in the indictment for several reasons," which will be discussed in more detail below. *See id.* at 6.

### III. DISCUSSION

**A.     Rule 29**

Rule 29 of the Federal Rules of Criminal Procedure allows a district court, upon the defendant's motion, to "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). A court evaluating a Rule 29 motion must "review all of the evidence presented at trial 'in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government,'" *United States v. Walker*, 191 F.3d 326, 333 (2d Cir. 1999) (quotation omitted), and a jury verdict must be upheld if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (quotation and emphasis omitted); *accord United States v. Reyes*, 302 F.3d 48, 52 (2d Cir. 2002). Stated another way, "'[a] judgment of acquittal' is warranted 'only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilty beyond a reasonable doubt.'" *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (quotation omitted); *see also United States v. White*, 7 F.4th 90, 98 (2d Cir. 2021). The burden of supporting a Rule 29 motion is on the defendant, and the Second Circuit has repeatedly described that burden as "very heavy." *United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002); *see also United States v. Caracappa*, 614 F.3d 30, 43 (2d Cir. 2010) (same); *United States v. Macklin*, 927 F.2d 1272, 1277 (2d Cir. 1991).

Additionally, "the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court." *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) (citation omitted). In reviewing the record, the Court must analyze the pieces of evidence

"'not in isolation but in conjunction,'" *United States v. Brown*, 776 F.2d 397, 403 (2d Cir. 1986) (quotation omitted); *see also United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2010), and must apply the sufficient test "to the totality of the government's case and not to each element, as each fact may gain color from others." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (citation omitted); *see also Reyes*, 302 F.3d at 53 (holding that "we consider the evidence as a whole"); *Persico*, 645 F.3d at 104. "These standards apply whether the evidence being reviewed is direct or circumstantial." *Persico*, 645 F.3d at 105 (citation omitted).

**B.   Application**

Count Four charges Defendant with receiving illegal compensation while serving as a public official, in violation of Title 18, United States Code, Sections 203(a)(1)(B) and 216(a)(2). Count Four reads in relevant part as follows:

> From at least in or about 2018, through and including at least in or about 2022, in the Southern District of New York and elsewhere, DIONISIO FIGUEROA, a/k/a "Dionicio," the defendant, at a time when FIGUEROA was an employee of the United States in the judicial branch of the Government, otherwise than as provided by law for the proper discharge of official duties, directly and indirectly, knowingly and willfully demanded, sought, received, accepted, and agreed to receive and accept compensation for representational services as an agent, attorney, and otherwise, rendered and to be rendered personally and by another, in relation to a proceeding, application, request for a ruling and other determination, contract, claim, controversy, charge, accusation, arrest, and other particular matter in which the United States was a party and had a direct and substantial interest, before a department, agency, court, court-martial, officer, and a civil, military, and naval commission, to wit, FIGUEROA sought, received, and accepted, and agreed to receive and accept, a portion of compensation paid for representational services rendered and to be rendered by Del Valle as an attorney to criminal defendants in cases pending in the District Court.

In relevant part, 18 U.S.C. § 203 provides as follows:

> Whoever, otherwise than as provided by law for the proper discharge of official duties, directly or indirectly – ... demands, seeks, receives, accepts, or agrees to receive or accept any compensation for any representational services, as agent or attorney or otherwise, rendered or to be rendered either personally or by another – ... at a time when such person is an officer or employee or Federal judge of the United States in the executive, legislative, or judicial branch of the Government, or in any agency of the United States, in relation to any proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, court, court-martial, officer, or any civil, military, or naval commission ... shall be subject to the penalties set forth in section 216 of this title.

18 U.S.C. § 203(a)(1)(B).

In his motion, Defendant primarily argues that the Government failed to establish that either he or Del Valle provided "representational services" as required to support a conviction under Section 203(a). *See* Dkt. No. 81. Considering the fact that criminal statutes are to be strictly construed and in "recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity,'" *Liparota v. United States*, 471 U.S. 419, 427 (1985) (quotation omitted), the Court agrees with Defendant that his conviction on Count Four must be set aside.

In *United States v. Myers*, the defendant challenged the jury instruction of his conviction under Section 203(a). *See United States v. Myers*, 692 F.2d 823, 853 (2d Cir. 1982). The defendant argued that section 203(a) "proscribes receipt of payment for rendering only 'representational' services before government agencies, whereas the District Court's instruction permitted the jury to find a violation for rendering services of a broader nature including merely giving advice." *Id.* In granting the defendant's motion for a new trial, the Second Circuit considered the legislative antecedents to Section 203 and concluded that "Congress was primarily

6

concerned with government officials being paid to bring their influence to bear on federal agencies." *Id.* at 855. The court noted that the legislative history "suggests that section 203(a) should be limited to services rendered before federal agencies – the mischief toward which the statute was directed – and not mere advice concerning agency proceedings." *Id.* at 854.

In examining this statute, the Second Circuit noted that a member of Congress is entitled to appear before courts, even on matters in which the United States has an interest, without violating Section 203(a).³ *See Myers*, 692 F.2d at 855. The court noted, however, that this member of Congress might encounter "a situation where a matter concerning his client merits court challenge but requires prior exhaustion of administrative remedies." *Id.* In that situation, the Second Circuit noted that, although Section 203(a) would "[u]nquestionably" bar the member of Congress from handling the matter before the administrative agency," it would not prohibit the member of Congress from counseling his client "to obtain additional counsel for representation before a federal department or agency." *Id.* at 855-56. Accordingly, the Second Circuit found that the trial court erred in instructing the jury that the defendant could be found guilty of the Section 203(a) violation by broadly construing the term "services" to include "a wide variety of services such as giving advice about [i]mmigration, how to delay deportation, how to improve one's chances of remaining in the country..." *Id.* at 858. As such, the Second Circuit agreed with the defendant that, if the evidence at trial only established that he had simply advised the other party's representatives to "consult with [another], who would handle legal matters concerning immigration problems," this would be insufficient to support a conviction under Section 203(a). *Id.*

---

³ In the prior version of Section 203(a), "courts" were not included in the list of places where covered individuals were prohibited from providing representational services.

In *United States v. Wallach*, 979 F.2d 912 (2d Cir. 1992), the Second Circuit addressed Section 203 violations in the context of a conspiracy where the alleged conflict of interest involved a person (Wallach) who was not yet a government official but merely anticipated an appointment to such a position. Specifically, the indictment alleged a conspiracy in which Wallach would receive compensation "for services WALLACH was to render personally at a time when he was to be an officer and employee of the United States in the executive branch, in relation to ... contracts ... before a department ..., namely, Wedtech's efforts to obtain federal Department of Defense manufacturing contracts." *Id.* at 919-20. The court addressed whether evidence that Wallach would lobby the U.S. Attorney General to lobby the Department of Defense suffices to establish a Section 203 violation. *See id.* at 920.

The Second Circuit concluded that Section 203 applied. The court reasoned that Section 203(a), as it read at the time of Wallach's offense, punished "receipt of compensation, while a federal officer, 'for any services rendered or to be rendered either by himself or another ... in relation to any ... contract ... in which the United States is a party ... before any department...'" *Id.* (quotation and emphasis omitted). The court concluded that Congress wished to punish federal officials who accept compensation not only for services rendered directly before the department where the contract decision is pending, but also for services rendered indirectly through another federal official, as the statute explicitly applies to services to be rendered "either by himself or another." *Id.* This covers the situation where an officer sends an emissary to inform the agency of the officer's own interest in the matter and support construction that the statute also applies to a "two-step arrangement" in which an officer, for compensation, personally influence another officer to influence the department before which a contract is pending. *See id.* at 920. Since it was reasonably foreseeable that the Attorney General would endeavor to influence the

8

Department of Defense on behalf of Wedtech, Wallach's acceptance of compensation to act, after Wallach became a federal official, after Wallach became a federal official, to influence the Attorney General to do so, was punishable under Section 203(a).  *See id.*

In the present matter, the relevant part of Count Four alleges that Defendant sought, received, and accepted and agreed to receive and accept, a portion of compensation paid for representational services rendered and to be rendered by Del Valle as an attorney to criminal defendants in cases pending in the United States District Court for the Southern District of New York.  The conspiracy charge, Count One, encompasses the allegations of Count Four as one of the objects of the conspiracy.

The Court agrees with Defendant that Section 203 is not applicable to the acts alleged in the indictment for several reasons.  First, this is not a "situation where an officer [Defendant] sends an emissary [Del Valle] to inform the agency of the officer's own interest in the matter." *Wallach*, 979 F.2d at 920.  Rather, Del Valle was advocating in court on behalf of his client's interests.  Likewise, this is not the "two-step arrangement." *Id.*  As Defendant notes, Del Valle's professional interests, *i.e.*, advocating for clients, are detached from Defendant who provides the information.  The simple provision of advice to criminal defendants and their families that they should consider retaining Del Valle is not the kind of conduct prohibited by Section 203(a).  *See Myers*, 692 F.2d at 858 (holding that simply advising the other party's representatives to "consult with [another], who would handle legal matters concerning immigration problems" is insufficient to support a conviction under Section 203(a)); *see also Office of Government Ethics Informal Advisory Memorandum 86x9*, available at 1986 WL 69192 (Aug. 8, 1986) (advising that the provision of purely factual information is not a representational service prohibited by Section 203).  Additionally, Defendant had no influence over the court before which Del Valle was

performing his representational services. Thus, Del Valle's advocacy was not "representational services" as contemplated in Section 203 because his communications to and appearances before a federal court were consistent with his fiduciary duty to zealously advocate for his client and were not representing Defendant's interests.

Moreover, as noted above, the Second Circuit in *Myers* considered the legislative antecedents to Section 203 and concluded that "the legislative debate that surrounded its passage reveals that Congress was primarily concerned with government officials being paid to bring their influence to bear on federal agencies." *Myers*, 692 F.2d at 855. Defendant was not attempting to bring his influence to bear in federal court. Defendant had no influence over the matters in which Del Valle appeared and the Government's evidence, at most, established that Defendant persuaded criminal defendants to consider retaining Del Valle. The legislative history makes clear that Section 203 was not intended to extend to such conduct. *See Office of Government Ethics Informal Advisory Memorandum 99x49*, available at 1999 WL 35791974 (Dec. 22, 1999) ("'Representational services' means communications to or appearances before specified Federal entities, with the intent to influence the Government on behalf of a third party"). Although this conduct may very well be a violation of ethical rules, that issue is separate from whether there is a violation of Section 203. *See United States v. Walden*, 122 F. Supp. 903, 905 (E.D. Pa. 1954).

In this case, Defendant was accused of facilitating the referral of criminal defendants to Del Valle, who then paid Defendant a portion of the fee he received. The money Del Valle (and subsequently Defendant) received was not paid by the Government through the CJA fund. Rather, all of the money at issue came from the criminal defendants and their families. No influence was exerted by Defendant or Del Valle and the compensation was not contingent on whether Del Valle was able to obtain a favorable outcome for the referred criminal defendants.

Such conduct is clearly outside the scope of Section 203. *See Office of Government Ethics Informal Advisory Memorandum 99x49*, available at 1999 WL 35791974 (Dec. 22, 1999) ("However, where the compensation is not actually paid in exchange for the provision of representational services to a third party, but merely accrues as a result of someone else's success in obtaining Government funding or other favorable action for some business project, there is a diminished risk that the employee would be getting paid because of some actual or supposed influence with the Government").

Accordingly, the Court grants Defendant's Rule 29 motion as to Count Four of the indictment.[4]

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Defendant's motion for a judgment of acquittal is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Defendant is hereby **ACQUITTED** of the conduct charged in Count Four of the indictment; and the Court further

---

[4] Defendant also challenges the Section 203 violation as an object of the conspiracy charged in Count One of the indictment. Because the jury found Defendant guilty on the bribery count (Count Two), which was a separate object of the conspiracy charged in Count One, this aspect of Defendant's motion must be denied. *See United States v. Parris*, 88 F. Supp. 2d 555, 561 (E.D. Va. 2000) (holding that "a general verdict conviction on a multiple object conspiracy does not fail if, on a post-verdict motion, one or more of the objects, but not all, are insufficient supported in the trial record. The conviction stands provided at least one of the alleged objects passes Rule 29 muster") (citation omitted); *see also Griffin v. United States*, 502 U.S. 46, 48-58 (1991) (holding that the due process does not require that in a federal prosecution general guilty verdict in multiple-object conspiracy be set aside if evidence is inadequate to support conviction as to one object).

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 7, 2024
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge