Letter Writers

Debra Freeman, Esq. – retired Magistrate Judge SDNY of 20 years.

Jennifer L. Brown, Esq. – Attorney in Charge SDNY FPD.

Deirdre D. von Dornum, Esq. AFPD over 20 years.

Zachary Margulis-Ohnuma, Esq. – Former clerk and current CJA in SDNY and EDNY.

Megan Benett, Esq. – SDNY CJA 2011-present.

Lisa Scolari, Esq. – SDNY CJA for more than 30 years.

Sarah Kunstler, Esq. – SDNY Criminal Defense Lawyer almost 20 years.

Neil B. Checkman, Esq. – CJA SDNY and EDNY for over 30 years. Recently retired.

Avrom Robin, Esq. – Almost 20 years as CJA for SDNY. Recently retired.

John M. Burke, Esq. – CJA SDNY for over 20 years.

Kelley Sharkey, Esq. – CJA SDNY for over 20 years.

Michael H. Sporn, Esq. – 40 years CJA SDNY

Louis M. Freeman, Esq. – 50 years Criminal Defense, CJA SDNY, EDNY 40 years.

January 3, 2024

Hon. Mae A. D'Agostino
U.S. District Judge, Sitting by Designation in the S.D.N.Y.
U.S. District Court, Northern District of New York
445 Broadway
Albany, NY 12207

Re: Sentencing of Dionisio Figueroa, Case No. 7:23-cr-00161 (MAD)

Dear Judge D'Agostino,

In 2022, I retired after 21 years on the bench as a U.S. magistrate judge in the Southern District of New York, in Manhattan. In that position, I came to know Dionisio Figueroa, and I write this letter to share my thoughts about his character, based on my personal interactions with him over the years. I should add at the outset that neither Mr. Figueroa, nor his counsel, nor anyone else approached me about writing a letter on his behalf. Rather, when I heard through the grapevine about Mr. Figueroa's conviction, I sought out his attorney and offered to write.

While serving as a judge, I saw Mr. Figueroa regularly, whenever I was on criminal duty. During my time on the bench, there were 11 magistrate judges in Manhattan, and we had a criminal-duty rotation. Generally, I had responsibility on criminal matters (including warrant and other applications, referred presentments, bail hearings, arraignments, pleas, and other proceedings) every 11 weeks. Mr. Figueroa was one of my favorite people in the Clerk's office that served the criminal courtroom. It was easy to see how much he enjoyed his work, and I consistently found it a pleasure to work with him. He always greeted me in good humor and with a smile, and he genuinely seemed to care about how I and my family were doing.

A story that I particularly wanted to relate, though, happened outside the Courthouse. It was a weekend, and I had been shopping at the Target on East 117th Street. Mr. Figueroa found me waiting for a bus home, on Second Avenue. East Harlem was his neighborhood, and he apparently didn't believe that it was a good idea for me to have been walking around there by myself. Despite my protestations that I was perfectly fine, he insisted on waiting with me until the bus finally arrived and I was safely on board. Clearly, his instinct was to take care of me. I also recall running into Mr. Figueroa once outside Lenox Hill Hospital, after his father had been hospitalized with a serious condition. We stopped and spoke for a while about his dad's situation, and he again struck me as having a very kind and caring soul. Indeed, "good-hearted" was the first thing that came to mind when I thought about how best to describe Mr. Figueroa in this letter.

I have no knowledge of the criminal conduct that was established in the case before Your Honor or the circumstances of that conduct, but I have trouble believing that justice would best be served by Mr. Figueroa's incarceration. I suspect that he has already been significantly punished by the loss of his job, and I would think that any chance of recidivism would be nil. With his

kind nature, Mr. Figueroa has much that he could contribute to the community, and, in light of this, I urge you to consider a non-incarceratory sentence.

Thank you for taking these thoughts into account.

Sincerely,

Debra Freeman

January 4, 2024

Hon. Mae A. D'Agostino, U.S. District Judge
U.S. District Court, N.D.N.Y.
445 Broadway
Albany, New York 12207

**Re: Sentencing of Dionisio Figueroa**

Dear Judge D'Agostino,

I write in support of Dionisio Figueroa in advance of his sentencing. I am the Attorney-in-Charge at the Federal Defenders in the Southern District of New York. I've been a Federal Defender in SDNY since 1999 and Attorney-in-Charge since 2013. I've known and admired Lisa Peebles since we both attended a two-week training together in Macon, Georgia over twenty years ago.

I met Dionisio when he started in the Magistrate Clerk's office in the early 2000s, so I've also known Dionisio for more than twenty years. Even though New York is a big city, the SDNY courthouse is a small(ish) community. Based on my experience both as an Assistant Federal Defender and as head of the office, I want to share with you Dionisio's overall reputation and my personal dealings with him at the courthouse.

I attended a portion of the trial and read the entire transcript, including the testimony of his long-time colleagues. So I know you are familiar with Dionisio's "loud" and "friendly" demeanor, and his particular kindness to Spanish-speaking families and defendants who appeared on the fifth floor of 500 Pearl Street. I don't know if the testimony fully captured how universally well-liked he was and is among the defense bar and within the courthouse community.

Why? It's not just because he always had a smile for you, remembered your kids' ages and asked to see pictures of how big they were getting. Or because while some (not naming names) courthouse employees would be grumpy about staying late for a late presentment, he always seemed cheerful. But it was also because he genuinely seemed to see and respect our clients and their families and most importantly, he made our jobs just a little bit easier.

Being "on duty" in mag court is not an easy task. One single duty attorney may sometimes pick up as many as five new cases in a single day. There are a lot of moving parts. Dionisio would go out of his way to help you manage. He would direct

you to family members waiting in the hallway so you could connect them to pretrial and get critical information for your bail hearing. He would call the marshals to remind them that they needed to bring your client up from the fourth floor to the fifth floor to sign the bond so the client could be released. He would stay on top of new AUSAs to quickly finish preparing their complaints so you would have what you need to inform your client of the charges against him. He would send your first case in early to the courtroom for presentment so you could go back to pretrial and interview your second and third client while the judge heard a CJA case or took a plea. He was just generally helpful and kind in ways that mattered. He did whatever he could to ensure that clients and their families were treated humanely by the Court during a very difficult time.

As I hope became clear in the trial, Dionisio's reputation at the courthouse was stellar. My colleagues and I at the Federal Defenders were heartbroken to hear about his conviction. I can't tell you how many people both in and out of the office commented on how sad it was to see the mug shot of Dionisio that has been hanging just outside the main entrance of the US Attorney's office at One St. Andrew's for over a year. He has been publicly shamed for his conduct. He has lost a job that he was very good at and that he loved. In these ways, this very proud man has already been punished.

I am aware that the Sentencing Guidelines will likely recommend a jail sentence in this case. I hope that you will exercise your discretion to impose a non-custodial sentence instead, taking into consideration Dionisio's many many years of service to the Court and to the Federal Defenders and CJA community, and the punishment he has already endured. Obviously, he has been specifically deterred by his very public trial and conviction. As for the seriousness of the offense and general deterrence, seeing a good man lose his good name and livelihood and carry the stigma of a felony conviction for the rest of his life is sufficient to satisfy those statutory purposes.

We are grateful to the Federal Defenders of the Northern District for their outstanding representation of Dionisio. I know Dionisio is grateful too. He told me, himself, on the day I attended the trial. We miss him at the courthouse. His good deeds far outweigh the harms caused by his offense conduct. A jail sentence would be "greater than necessary" in this case and I urge you not to impose one.

Respectfully,

Jennifer Brown

Jennifer L. Brown
Tel: 646 763 1420

Federal Defenders
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

Barry D. Leiwant
*Interim Executive Director and Attorney-in-Chief*

*Eastern District of New York*
Michelle A. Gelernt
*Interim Attorney-in-Charge*

March 12, 2024

Hon. Mae A. D'Agostino
U.S. District Judge
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207

Re: *United States v. Dionisio Figueroa*, 23 Cr. 161 (MAD)

Dear Judge D'Agostino:

I write on behalf of Dionisio Figueroa to urge the Court to show him leniency at sentencing, based on his years of hard work on behalf of all participants in arraignments in the SDNY, the warmth and kindness he showed so many panicked and confused defendants and their families, and, in my view, his far less culpable role in the offense he was convicted of.

I have known Mr. Figueroa since my first day as an Assistant Federal Defender in July 2002. On my very first day of work – with no courtroom experience whatsoever, coming from a big law firm – I was on arraignments duty, alone. (This was a different time in terms of training and supervision). Only it turned out I wasn't alone. I went to the 5th floor of 500 Pearl Street and walked into the Arraignment Clerk's office to ask if any charging paperwork was available for the new arrests. I was greeted by an extremely friendly clerk – Dionisio – who introduced himself and asked all about me. When I explained that I had never appeared in arraignments before, he walked me through the steps: the agents would bring my client to the courthouse, I could (and should) speak to him before he underwent the Pretrial Services Interview, at some point the AUSAs would send over the complaint, I should think about my bail argument and try to talk to the client's family to see if they could sign a bond, and when all was ready, I would go into courtroom 5A for the client to be presented and the bail argument heard. He had no reason to help me. I had no status, no power, nothing to offer. But he wanted the process to be fair for the defendants. I saw that on the first day, and I saw it every day for the next eight years that I worked in the SDNY, before moving to practice primarily in the EDNY. I watched (and listened to – I am fluent in Spanish) Dionisio speak to hundreds of defendants released on bail and carefully explain their bail conditions to them, making certain he was doing all he could so they understood. I listened to him reassure anxious families. I watched him help defense counsel and young AUSAs alike navigate the arraignments process. He was full of heart. Even after I moved over to EDNY in 2010, when I had occasion to be at 500 Pearl Street, I always stopped by the 5th floor to say hello to Dionisio and get a huge hug (a rare thing in 500 Pearl).

Obviously, I have no firsthand knowledge of what transpired between Dionisio and Ted Del Valle, whom I also know from the courthouse. But, in terms of relative culpability, and the actual knowledge and intent of the two, it seems significant to me that Mr. Del Valle was a powerful lawyer; Dionisio a clerk. Mr.

Del Valle has a law degree; Dionisio a high school education. Mr. Del Valle was the President of the Hispanic Bar Association and had a very successful law practice; Dionisio was struggling to pay his bills. It is hard to imagine that this would ever have occurred if Mr. Del Valle had not initiated it. I also can see how this might have started innocently, with defendants' families asking Dionisio if he knew any good Spanish-speaking lawyers. In my experience, many Spanish-speaking defendants and their families are more comfortable with Spanish-speaking lawyers. It makes sense to me that Dionisio would recommend Mr. Del Valle, who had a very good reputation and was known to care about his clients and work hard for them. If Mr. Del Valle, at some point in time, began giving Dionisio some money to thank him for the referrals, Dionisio might not have thought it through sufficiently. Of one thing I am sure: Dionisio never did anything that would hurt a defendant. If he recommended a lawyer to a defendant or that defendant's family, he did so out of a belief that the lawyer would do a good job for the defendant. I know that doesn't ameliorate in full the harm the court experienced and the feeling of betrayal.

In my view, no jail time is needed for deterrence, either of Dionisio specifically—the anguish he has experienced by becoming a defendant is palpable and I do not think there is any risk of him committing any future crime—or of other court employees, all of whom have followed this case extremely closely and who feel the consequences of what happened.

Thank you for your consideration of this information.

Respectfully Submitted,

Deirdre D. von Dornum
Federal Defenders of New York
(718) 330-1210

# ZMO LAW PLLC

January 7, 2024

***Via email Submission to Defense Attorney***

Hon. Mae A. D'Agostino
United States District Judge
Northern District of New York
445 Broadway
Albany, NY 12207

RE: *Sentencing of Dionisio Figueroa*

Dear Judge D'Agostino:

I am an attorney admitted to practice in the Southern District of New York since 2000, a former law clerk to the Hon. Andrew J. Peck, a member of the Criminal Justice Act panels for the Eastern and Southern Districts of New York since 2006, and a colleague to countless defense attorneys, clerks, judges, prosecutors, and others who work in the SDNY courthouses. I write in support of leniency for Dionisio Figueroa, whom I know only as a dedicated public servant who showed compassion and understanding to people in their time of need.

While clerking for Magistrate Judge Peck in 1999 and 2000, I had the opportunity to work in "Mag Court" for a week at a time when Judge Peck was on criminal duty. While I did not know Dionisio then – he started a couple of years later – I did get to know the unique challenges that the "mag clerks" face in dealing with a high volume of criminal cases, distraught families separated from their loved ones for the first time, and demanding judges and attorneys who want their cases readied and heard without delay.

I got to know Dionisio while working as a criminal defense lawyer in the SDNY, both on CJA and retained cases. I agree, based on the jury verdict, that what Dionisio did was illegal, unethical, and wrong. But I also think the U.S. Attorney's Office rhetoric is a bit overblown, and sincerely doubt that anyone was actually hurt by Dionisio's referrals to an attorney who was otherwise well-respected (I don't know the attorney personally). What I do know is that Dionisio went out of his way, in a gruff but friendly manner, to make sure that defendants who found themselves charged in mag court understood their

obligations to the clerk's office and their bonds, knew where they had to go, and were connected with their court-appointed attorneys, including me. He treated defendants and their families with care and kindness, something not always true of all court clerks. Dionisio was, for most of the time I worked with him, the only person in the clerk's office who spoke fluent Spanish and therefore his assistance was essential for defendants who could not speak English.

In a strict sense, as a competing lawyer for the business that Dionisio sold to another attorney, I am a victim of his crime. I also have a reputation for being quick to criticize my colleagues when I feel they act in ways that do not further their clients' best interests. But I don't lament any cases I might have lost to Dionisio's criminal scheme because I do not believe that any defendants were in fact hurt by his actions, wrong as they were. I hope that my status as a victim and as an advocate for people denied effective assistance of counsel will give my opinion and voice a bit of extra weight as I suggest to the Court that, in my view, there is no need for incarceration (or even home confinement) for Dionisio. I believe that a restitution order requiring him to pay any money he earned to the Federal Defenders or another deserving defense-oriented organization and community service (which I am confident he will do gladly) would be sufficient punishment. Sending him to federal prison would be a colossal waste of tax dollars and cause totally unnecessary suffering to him, his family, and the understaffed Bureau of Prisons.

Thank you for taking the time to read this letter and thoughtfully sentencing in this difficult case.

Very truly yours,

*Zachary Margulis-Ohnuma*

Zachary Margulis-Ohnuma

KREINDLER LLP

KREINDLER & KREINDLER LLP | 485 Lexington Avenue | New York, NY 10017-2629
office: 212.687.8181 | fax: 212.972.9432 | www.kreindler.com

March 6, 2024

Hon. Mae A. D'Agostino
U.S. Federal Courthouse
445 Broadway
Albany, New York 12207

Re: *United States v. Dionisio Figueroa*, 23-cr-161 (S.D.N.Y.) (MAD)

Dear Judge D'Agostino:

I am writing this letter on behalf of Dionisio Figueroa, who I understand you will be sentencing following his conviction at trial.

I first met Mr. Figueroa soon after I joined the Southern District of New York's Criminal Justice Act mentorship program around 2010. When I was then admitted to the CJA panel in 2011, I had regular contact with Mr. Figueroa up until the instant case. Over the course of those nearly 15 years, Mr. Figueroa was always a kind, friendly, helpful and generous presence in the magistrate clerk's office.

One instance in particular stands out in my mind. After one of my very first CJA duty days, I realized that I had taken home with me the mobile phone belonging to the magistrate clerk that was used by panel attorneys on their duty days. The earliest that I could get back to the magistrate clerk's office was the following day, after picking up my daughter from elementary school. She and I jumped on the subway and arrived at the courthouse at the end of a Friday afternoon. Despite showing up at the tail end of the work week, Mr. Figueroa greeted us both with a huge smile and chatted up my quiet and introverted daughter. After that day, and for all of the years that followed, I never saw Mr. Figueroa without him immediately asking after my family, always wanting to make sure his "little friend" was doing well. Indeed, several years later when I brought her Girl Scout troop for a meeting with one of the judges in the S.D.N.Y., we all made a stop by magistrate court so that the kids could see the wheels of the criminal justice system at work. Mr. Figueroa again delighted in greeting the group and helped usher everyone quietly in to watch an arraignment in process.

I am deeply saddened by the course of events that have led Mr. Figueroa to be in front of the Court now. While I cannot speak to the charges and the conduct here, I can vouch for Mr. Figueroa's decency and humanity as a friend. He is – as are we all – better than his worst mistakes.

Respectfully,

Megan Benett

LISA SCOLARI
Attorney at Law
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007
scolarilaw@gmail.com
(212) 227-8899

March 3, 2024

Hon. Mae A. D'Agostino
United States District Court
Northern District of New York
Albany, N.Y.

Re: United States v. Dionisio Figueroa
23 Cr. 161 (MAD)

Your Honor:

I am an attorney admitted to this court and have been a member of the Southern District of New York's C.J.A. panel for more than thirty years. I have known and worked with Dionisio Figueroa in his professional capacity since he became a clerk in the S.D.N.Y. Magistrate Office.

It would be difficult to overstate Dionisio's kindness and willingness to help the people he encountered while working in the clerk's office. He treated lawyers, both prosecution and defense, defendants and their family members with respect, warmth and generosity. He would go out of his way to notify counsel when a client's family was looking for their loved one's attorney, including calling that lawyer if they were not present in court. He was helpful and patient with those who needed his assistance with the Spanish language. As Dionisio was assigned to work the late shift in the clerk's office he often worked into the evening when arraignment sessions ran late in court. He was consistently cheerful and helpful during those late hours, preparing bonds and explaining them to those signing.

In my experience, Dionisio conducted himself responsibly and professionally. He consistently avoided giving often requested legal advice, instead advising clients and their families to consult with counsel on issues such as seeking permission to travel outside of the jurisdiction.

While I realize that the charges, which include a betrayal of a position of responsibility are serious, I urge the Court to sentence Dionisio with compassion and mercy. The decency and kindness he showed in the performance of his job, rather than his illegal conduct, are the true measure of the man.

Respectfully,

Lisa Scolari

LAW OFFICE OF SARAH KUNSTLER
315 FLATBUSH AVENUE #103 • BROOKLYN, NEW YORK 11217
(718) 783-3682 • FAX (347) 402-2014 • KUNSTLERLAW.NET

February 28, 2024

Hon. Mae A. D'Agostino
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207

Dear Judge D'Agostino:

Please accept this letter of support for Dionisio Figueroa.

I am a federal criminal defense lawyer and have known Dionisio for many years. I first met him in approximately 2005, when I began working as an associate in the law office of Elizabeth Fink, who held a CJA appointment in the Southern District of New York. As a new lawyer at the start of my practice, I found it nerve-wracking appearing in Magistrate's Court. Dionisio was a friendly face who put me at ease. Over the years, he never forgot me – and I always enjoyed seeing him. He always remembered my children and always asked after them. He always gave me a place to hang my coat or an outlet to charge my phone.

Dionisio was also friendly to, and compassionate with, our clients and their families. He understood that appearing in court for a new arrest is a stressful, often life-altering experience for defendants and their loved ones, and his warmth and humor made everyone feel just a little bit better. I think it comes down to Dionisio's humanity – he is positively brimming with it. He makes everyone he comes into contact with feel worthwhile and respected. A defendant's contacts with the U.S. criminal justice system, which incarcerates more people, in both absolute numbers and per capita, than any other nation in the world, can often be both dehumanizing and anonymizing. Dionisio's kindness to everyone he came into contact with stands in stark contrast to this dehumanization.

I have been a lawyer now for almost 20 years and have served on the Southern District and Circuit CJA panels. And the kindness that Dionisio showed me has shaped my practice immeasurably. In many cases, there is very little I can do to change the practical outcome of my client's cases; but what I can ALWAYS do is treat them with the kindness I learned from Dionisio

I know that Dionisio has been charged with a serious crime in connection with the job he loved so well. And while I am disappointed, it does not change my fundamental view of him as a person. I am just one person whose life Dionisio has touched, and I know there are many of us. I hope my letter provides some context that will help your Honor reach a just sentence in his case.

Respectfully submitted,

Sarah Kunstler

Neil B. Checkman, Esq.
1044 Washington Drive
Centerport, New York 11721
Neil@checkmanlaw.com
(212) 264-9940

January 4, 2024

Hon. Mae A. D'Agostino
United States District Judge
Northern District of New York
James T. Foley U.S. Courthouse
Suite 509
445 Broadway
Albany, NY 12207

**Re: United States v. Dionisio Fegueroa**

Dear Judge D'Agostino:

I am an attorney who has recently retired from the Criminal Justice Act panels of the SDNY and the EDNY where I served for over thirty years. During my tenure as a CJA attorney in the Southern District of New York I had the pleasure of dealing with Dionisio Figueroa during his employment as a Magistrate Judge Clerk.

Dionisio was always helpful to me and my colleagues, often going to great lengths to be kind to my client's families when they came to him with questions about appearances and bail issues.

It was with great sadness that I learned of his conviction in this case. I ask the Court to credit Dionisio with the years of service he gave to the attorneys of the Southern District and their clients in fashioning an appropriate sentence. I urge this Court to sentence him with the compassion he has shown so many of our clients. I ask the Court to consider a non-incarcerative sentence in this case.

I thank the Court for considering this letter in his support.

Very truly yours,

Neil B. Checkman

Neil B. Checkman

LAW OFFICES OF
LONDON & ROBIN

IRA D. LONDON (2001-2020)
AVROM ROBIN
----------

99 PARK AVENUE
SUITE 2600
NEW YORK, NEW YORK 10016
TEL: 212-683-8000
FAX: 212-683-9422
EMAIL: a.robin@londonrobin.com
avrom@mindspring.com

February 5, 2024

Honorable Mae A. D'Agostino
United States District Court Judge
U.S. Federal Courthouse
445 Broadway
Albany, New York 12207

Re: United States v. Dionisio Figueroa
Case No. 23-CR-161

Dear Judge D'Agostino:

I write regarding the sentencing of Dionisio Figueroa.

As a former CJA panel member in the Southern District of New York, I worked with Dionisio for almost twenty years in his capacity as an arraignments clerk at the 500 Pearl Street courthouse in lower Manhattan.

Dionisio, being bi-lingual, was the public facing clerk for Spanish speaking families whose relatives had been arrested and charged in the SDNY during the whole period of time I did panel work, from 2001 to 2022.

My estimate is that I had between 50 and 75 Spanish speaking clients and families during that time, and for many of these families Dionisio was the sole point of contact in the clerk's office, indeed, the sole point of contact with the system aside from me in my role as assigned counsel.

Many times I observed these interactions between the families – most often, mothers, sisters, wives and girlfriends – of my clients and Dionisio Figueroa.

Dionisio took the time to explain to all of them, slowly, carefully, in detail, and in Spanish, how the criminal justice process, especially bail with conditions, worked. Very few of these family members had prior experience with the federal system; many were terrified about what would happen to their family members after a sudden arrest, often early in the morning on the same day they were in court. Many of these family members were in tears and in shock, having had no idea that their family member had been committing crimes.

Dionisio went to great lengths to calm the family members and make them as comfortable as he could with the process. He didn't have to do any of this. He did it because he truly felt the families' anxieties and fears.

Many times I heard him say to the mothers, sisters, and wives of clients I was assigned to represent, in his efforts to calm them down, "you got a good lawyer. He will do a good job for you."

I was never, that I can remember, replaced by Ted Del Valle. I did know Mr. Del Valle and worked on multi – defendant cases with him where we were co -counsel.

In closing, I urge you to consider all of the above in sentencing Dionisio. He has already paid a huge price, having lost his job and his standing in the community. I understand that he was convicted of the charged crime, but I also ask you to consider that he did a tremendous amount of excellent public service in his many years at the courthouse.

Respectfully submitted,

AVROM ROBIN

JOHN M. BURKE
KELLEY SHARKEY
Attorney at Law

26 Court Street - Suite 2805
Brooklyn, New York 11242
Tel: (718) 875-3707
Fax: (718) 875-0053

February 8, 2024

Honorable Mae A. Dagostino
United States District Court
Northern District of New York

Dear Judge D'Agostino:

We would like to take this opportunity to ask the Court to be as merciful as possible when imposing sentence on Dionisio Figueroa. We have both been members of the CJA panels in the Southern District of New York for more than twenty years. During this time we have arraigned hundreds of indigent defendants in the Magistrate Court of the Southern District of New York.

Over the years Dionisio Figueroa has always been cordial and professional in his dealings with attorneys, defendants and the Court. He often went out of his way to help defendants and their families navigate the process of posting bail bonds. Dionisio Figuero frequently took the time to carefully explain the intricacies of the federal justice system to poor Spanish speaking defendants. His kind demeanor had a calming effect on citizens involved in the stressful events surrounding criminal arraignments and presentations.

We do not mean to minimize the serious nature of Dionisio Figueroa's crimes. Dionisio Figueroa, like us all, is better than his worst days. He has done many good things in his life and we humbly beg the Court to be merciful at sentence.

Respectfully yours,

John Burke Kelley Sharkey
Attorney Attorney

,

**MICHAEL H. SPORN**
ATTORNEY AT LAW

(212) 791-1200
mhsporn@gmail.com

299 BROADWAY
NEW YORK, NEW YORK 10007

42-40 BELL BOULEVA RD
BAYSIDE, NEW YORK 11361

February 27, 2024

Hon. Mae A. D’Agostino
United States District Judge
Northern District of New York
445 Broadway
Albany, New York 12207

Re: United States v. Dionisio Figueroa
Ind. No. 23 Cr 161 (MAD)

Dear Judge D’Agostino:

I write this letter to support Dionisio Figueroa as his sentencing date approaches. The core of my practice has been as a member of the CJA panel in the Southern District for over 40 years. In that capacity I have known Dionisio since he began working there in the Magistrate Clerk’s Office. I have interacted with him frequently in our respective roles, and I have seen countless other colleagues do the same. Here is what I can tell you.

Dionsio is good at his job. Multiple defendant cases often arise in the Southern District. Dionisio is adept at making sure that the various players, from court personnel to prosecutors to defense lawyers to pre-trial officers to marshals to defendants and their family members and potential co-signers all connect with each other so that the case can move efficiently toward presentment.

He also is a good man. Beyond making sure that all the moving parts get to the finish line, I have seen him go out of his way to help relieve anxious family members by making sure they connect with appointed lawyers in what can be a hectic, inscrutable scene to those unfamiliar with the process. I have no doubt he acted out of human compassion.

He always greets me and so many others with a friendly hello and a fist bump. He asks after our families and ruminates about the public affairs of the day with particular devotion to the ups and downs of the Mets and the Yankees. He has a gregarious, even outsized personality that endears him to his co-workers as well as the lawyers who interact with him.

It might be natural to assume that CJA counsel would be upset with Dionisio about the nature of the offense here. In fact the opposite is true. Yes, we all were shocked and saddened by the news of this case. But I can tell your Honor with confidence that there are legions of CJA colleagues who would be saddened further if we learn that Dionisio must spend time in custody. Of course we recognize that your Honor must consider the nature and circumstances of the offense. It is an undeniable stain. However it does not define the whole of his public service. Rather it is an aberration from decades of good work. I offer this history and his characteristics as sentencing factors that weigh heavily in Dionisio's favor in the balance, and I respectfully ask your Honor to take all these factors into account in fashioning a sentence that reflects compassion, fairness and justice.

Respectfully submitted,

Michael H. Sporn

MHS/ss

FREEMAN, NOOTER & GINSBERG
**ATTORNEYS AT LAW**

LOUIS M. FREEMAN
THOMAS H. NOOTER
LEE A. GINSBERG

NADJIA LIMANI
OF COUNSEL

CHARLENE RAMOS
OFFICE MANAGER

75 MAIDEN LANE
SUITE 503
NEW YORK, N.Y. 10038

(212) 608-0808
TELECOPIER (212) 962-9696
E-MAIL: FNGLAW@AOL.COM
WWW.FNGLAW.COM

March 15, 2024

Hon. Mae D'Agostino
United States District Judge
U.S. Courthouse
445 Broadway, Ste. 509
Albany, NY 11207

**Re: United States v. Dionisio Figueroa**
**23 Cr. 161 (MAD) [SDNY Docket No.]**

Dear Judge D'Agostino:

I write this letter to request leniency for Dionisio Figueroa when he is sentenced in April. I am aware of the charges and that he was convicted after trial. My focus will be on sentencing. I have been practicing criminal law for more than 50 years, as a public defender, as a supervising public defender, as a federal defender and then as a private practitioner who has been on the CJA panels in the SDNY and EDNY for 40 years. I am also on the Capital Panels for those districts. I teach trial practice at various law schools. I am a mentor in the SDNY and EDNY mentoring programs.

I have known Dionisio for many years as I am in the SDNY courthouse often. As you know, he was a clerk in the magistrate's section. But he wasn't just a clerk; he was the "face" of the section. He welcomed everyone the same way, with a big smile. He was always helpful. He translated the language of the bond from English into Spanish. He went out of his way to explain the bond terms carefully and patiently and was always willing to answer questions or re-translate.

When sat down to write this letter I thought about the recent amendment to the Guidelines which allows first- time offers to avail themselves of a reduction in points based on data that shows they are less likely to reoffend. I am sure – to the extent anyone can be sure of anything that - that Dionisio will not re-offend.

I ask that you take these thoughts into consideration when you fashion a sentence for Dionsisio.

Respectfully submitted,

/S/ Louis M. Freeman
Louis M. Freeman